

NUMBER 13-15-00091-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **TEXAS DEPARTMENT OF PUBLIC SAFETY,** | **Appellant,** |
| **v.** | |
| **ARMANDO CARDENAS,** | **Appellee.** |

### On appeal from the County Court at Law No. 7 of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Longoria
### Memorandum Opinion by Justice Longoria

The Texas Department of Public Safety (the Department) appeals the county court at law's judgment vacating an Administrative Law Judge's (ALJ) order that authorized the Department to suspend appellee Armando Cardenas's driver's license for two years. We reverse and render judgment reinstating the ALJ's order.

I. BACKGROUND

## A. Circumstances Surrounding Arrest

We take the following facts from the sworn report filed by Texas Department of Public Safety Trooper Hector Gonzalez and an affidavit executed by Hidalgo County Sheriff's Deputy Armando Castellano.[1]  At approximately 9:30 p.m. on May 17, 2014, Castellano observed a black Chevy Impala at an intersection with its high beam lights on. Castellano stated in his affidavit that the vehicle's lights "were blinding my vision."  As the vehicle drove south from the intersection, Castellano observed that the vehicle's rear license-plate light was "defective" and initiated a traffic stop.  When the driver, Cardenas, exited the vehicle to look at the license-plate light, Castellano smelled a strong odor of alcohol on his breath.  Castellano asked Cardenas if he had been drinking and Cardenas replied that he consumed one beer earlier in the evening.  Castellano also observed that Cardenas slurred his speech and had bloodshot eyes and an unsteady balance.

Castellano radioed for assistance, and Texas Department of Public Safety Trooper Hector Gonzalez responded.  Gonzalez stated in his report that he confirmed that the rear license plate lamp of Cardenas's vehicle was not functioning and then made contact with Cardenas.  Gonzalez smelled a strong odor of alcohol on Cardenas's breath.  Gonzalez asked Cardenas if he had been drinking, and Cardenas replied that he had consumed two sixteen-ounce beers earlier in the evening.  Gonzalez further observed that Cardenas slurred his speech and had bloodshot eyes.

Gonzalez performed the horizontal gaze nystagmus field sobriety test on Cardenas and stated in his report that Cardenas displayed six out of a possible six signs of

---

[1] Cardenas did not file a brief to assist us in the disposition of this appeal.

intoxication. Gonzalez did not require Cardenas to perform the walk-and-turn sobriety test because there was not enough room on that part of the road to perform the test safely. Gonzalez placed Cardenas under arrest for driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04 (West, Westlaw through Chapter 46, 2015 R.S.). Gonzalez transported Cardenas to the Palmview Police Department to administer a breathalyzer test. Gonzalez's report reflects that he read Cardenas the warnings required by statute and requested Cardenas to provide a breath sample. *See* TEX. TRANSP. CODE ANN. § 724.015 (West, Westlaw through Chapter 46, 2015 R.S.). Cardenas refused Gonzalez's request to provide a breath sample. Castellano executed a notarized affidavit detailing his initial stop of Cardenas before Gonzalez arrived. Gonzalez attached Castellano's affidavit to his report and mentioned its contents within it, but did not explicitly incorporate the affidavit.[2]

### B. Administrative Hearing

As a result of Cardenas's refusal to provide a breath sample, the Department suspended Cardenas's driver's license for a period of two years. *See id.* § 724.035 (providing that if a driver refuses an officer's request to provide a specimen of blood or breath the Department "shall" suspend that person's license for two years if the person has a previous alcohol or drug-related contact on his driving record) (West, Westlaw through Chapter 46, 2015 R.S.). Cardenas timely requested an administrative hearing to challenge the suspension of his driver's license. *See id.* § 724.041 (West, Westlaw through Chapter 46, 2015 R.S.).

At the hearing, counsel for the Department moved to introduce both Gonzalez's

---

[2] Gonzalez listed several documents in his report that he incorporated by reference, but the affidavit is not among them.

3

report and the attached affidavit of Castellano. Cardenas objected that Castellano's affidavit was not admissible because it was not incorporated into Gonzalez's report. Citing the Texas Supreme Court's decision in *Texas Department of Public Safety v. Caruana*, the ALJ overruled the objection and admitted both Gonzalez's report and the affidavit. *See* 363 S.W.3d 558, 558 (Tex. 2012). Later in the hearing, the ALJ admitted Cardenas's official driving record into evidence over his objection. Following the hearing, the ALJ entered the following findings of fact and conclusions of law:

**Findings of Fact**

1. On May 17, 2014, at approximately 10:27 p.m., reasonable suspicion to stop Defendant existed, in that a Texas peace officer within his jurisdiction observed Defendant operating a motor vehicle in a public place in Texas. The officer observed Defendant fail to dim high beams when approaching another vehicle and observed that Defendant's rear license plate lamp was inoperable.

2. On the same date, probable cause to arrest Defendant existed; in that probable cause existed to believe that Defendant was operating a motor vehicle in a public place while intoxicated, because in addition to the facts in [Finding of Fact] No.1, a Texas peace officer observed Defendant had a strong odor of alcohol, slurred speech, and bloodshot eyes. Defendant displayed 6 of 6 clues of intoxication on the Horizontal Gaze Nystagmus evaluation.

3. Defendant was placed under arrest and was properly asked to submit a specimen of breath or blood.

4. After being requested to submit a specimen of breath or blood, Defendant refused.

5. Defendant had one or more alcohol or drug related enforcement contacts during the ten years preceding the date of Defendant's arrest as is indicated on Defendant's driving record.

**Conclusions of Law**

4

Based on the foregoing, the Judge concludes the Department proved the issues set out in Tex. Transp. Code § 724.042 and that the Defendant's license is subject to a suspension for **two years** pursuant to Tex. Transp. Code § 724.035.

## C. Judicial Review

Cardenas appealed the ALJ's decision to the County Court at Law No. 7 of Hidalgo County, Texas. *See id.* § 524.041(c) (West, Westlaw through Chapter 46, 2015 R.S.). Following a hearing at which both parties appeared by counsel, the trial judge entered an order reversing the ALJ's decision and vacating the ALJ's order because the decision "violated one or more of the provisions set forth in Texas Government Code § 2001.174." The county court did not issue findings of fact or conclusions of law. The Department appealed to this Court.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

In a license-suspension proceeding, the ALJ is charged with determining whether: (1) reasonable suspicion or probable cause existed to stop the person; (2) probable cause existed to believe the person was operating a motor vehicle in a public place while intoxicated; (3) the person was placed under arrest by the officer and requested to submit to the taking of a blood or breath specimen; and (4) the person refused the officer's request to submit to the taking of a specimen. TEX. TRANSP. CODE ANN. § 724.042 (West, Westlaw through Chapter 46, 2015 R.S.).

Courts review an administrative order sustaining a license suspension to determine if it is supported by substantial evidence. *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (citing TEX. GOV'T CODE ANN. § 2001.174 (West, Westlaw through Chapter 46, 2015 R.S.)). A court applying this standard may not substitute its judgment for that of the ALJ. *Id.* "The issue for the reviewing court is not whether the

agency's decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action." *Id.* Courts presume that the ALJ's findings, inferences, conclusions, and decisions are reasonable and correct and put the burden on the complaining party to prove otherwise. *Tex. Dep't of Pub. Safety v. Gonzales*, 276 S.W.3d 88, 91 (Tex. App.—San Antonio 2008, no pet.). Courts must sustain an administrative decision if there is more than a scintilla of evidence to support it, even if the decision is against the preponderance of the evidence. *Mireles*, 9 S.W.3d at 131. However, we review the trial court's application of the substantial evidence standard *de novo. Tex. Dep't of Pub. Safety v. Struve*, 79 S.W.3d 796, 800 (Tex. App.—Corpus Christi 2002, pet. denied).

The Texas Rules of Evidence "as applied in a nonjury civil case in a district court of this state" apply to contested case hearings. TEX. GOV'T CODE ANN. § 2001.081 (West, Westlaw through Chapter 46, 2015 R.S.); *see* 1 TEX. ADMIN. CODE § 159.211(b) (West, Westlaw through 40 TEX. REG. 4488 (2015)). We review an ALJ's ruling on the admission or exclusion of evidence for abuse of discretion. *Struve*, 79 S.W.3d at 802–03. The ALJ abused its discretion if it acted without reference to guiding rules or principles. *Tex. Dep't of Pub. Safety v. Williams*, 303 S.W.3d 356, 358 (Tex. App.—El Paso 2009, no pet.).

### III. DISCUSSION

By two issues, the Department argues that the trial court erred in vacating the ALJ's order because (1) Castellano's report was independently admissible, and (2) Castellano had reasonable suspicion to initiate a traffic stop on Cardenas and Gonzalez had probable cause to arrest Cardenas for driving while intoxicated. We address each issue in turn.

6

## A. Admissibility of Castellano's Affidavit

Cardenas argued to both the ALJ and the trial court that Castellano's affidavit was inadmissible because Gonzalez's report did not expressly incorporate it. Thus, Gonzalez's report alone contained no basis for demonstrating that Castellano's traffic stop of Cardenas was lawful because Gonzalez did not arrive until after Castellano detained Cardenas. The ALJ overruled the objection, explaining that Gonzalez's failure to expressly incorporate Castellano's affidavit was inconsequential because Castellano's affidavit was independently admissible under the Texas Supreme Court's decision in *Caruana*. *See* 363 S.W.3d at 562–65. The Department argues on appeal that the trial court erred if it based its ruling on a conclusion that the ALJ erred by admitting these reports. We agree.

Texas Rule of Evidence 803, applicable in district courts, states that a "record or statement of a public office" is not excluded by the hearsay rule if it sets out: (1) "the office's activities"; (2) "a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law enforcement personal"; or (3) "in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation" when the party opposing admission "fails to demonstrate that the source of information or other circumstances indicate a lack of trustworthiness." TEX. R. EVID. 803(8).[3] There is a presumption of admissibility, and the burden is on the party opposing admission to show that the record is untrustworthy. *Corrales v. Dep't of Family*

---

[3] The Texas Supreme Court recently approved amendments to the wording of the Texas Rules of Evidence. *See* Order of Final Approval of Amendments to the Texas Rules of Evidence, Misc. Docket No. 15-9048 (Tex. March 10, 2015), *reprinted in* 78 TEX. B.J. 374–411 (May 2015). All references and quotations in this opinion are to the pre-amendment version of the rules.

*& Protective Servs.*, 155 S.W.3d 478, 486 (Tex. App.—El Paso 2004, no pet.).

In *Caruana,* the Texas Supreme Court held that an unsworn officer's report was admissible in a license revocation proceeding pursuant to Texas Rule of Evidence 803(8). 363 S.W.3d at 562–65. The Court found that nothing in the Texas Transportation Code or the applicable administrative rules governing contested case hearings compelled the contrary conclusion. *Id.* Unlike Gonzalez and the officer in *Caruana*, Castellano was not the arresting officer and not required by statute to file a report. *C.f.*, TEX. TRANSP. CODE ANN. § 724.032(a)(4) (providing that an officer shall make a written report to the "director of the department" in the event that a person refuses to provide a sample of breath or blood). However, nothing in *Caruana* limits its holding to those reports required by statute. *See* 363 S.W.3d at 562–65. Furthermore, Texas Rule of Evidence 803(8) also exempts from the hearsay rule a record or statement by a government office containing "factual findings from a legally authorized investigation." TEX. R. EVID. 803(8)(A)(iii). Courts have admitted records of police activity through this exception. *See, e.g., Corrales*, 155 S.W.3d at 486.

Later, Cardenas made no effort to meet his burden to show that Castellano's affidavit was untrustworthy. Thus, the ALJ's decision was consistent with the application of Texas Rule of Evidence 803(8). We conclude from the foregoing that Castellano's affidavit was independently admissible and the ALJ did not abuse its discretion by admitting it. *See Caruana*, 363 S.W.3d at 562–65; *see also Nassar v. Tex. Alcoholic Beverage Comm'n*, No. 13-14-00187-CV, 2014 WL 6602294, at *4 (Tex. App.—Corpus Christi Nov. 20, 2014, no pet.) (mem. op.) (concluding that an ALJ did not abuse its discretion by admitting a laboratory report containing the agency's factual findings). We

sustain the Department's first issue.

## B. Reasonable Suspicion and Probable Cause

The Department argues in its second issue that the trial court erred if it based its ruling on a conclusion that there was no reasonable suspicion to stop Cardenas and no probable cause to believe that he was operating a motor vehicle in a public place while intoxicated. We agree.

An officer may conduct a lawful stop of a person if reasonable suspicion exists that a person is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead a reasonable person to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Id.* When determining reasonable suspicion, courts disregard the subjective intent of the officer and decide only if an objective basis for the stop existed under the totality of the circumstances. *Gonzales*, 276 S.W.3d at 93 (citing *Ford*, 158 S.W.3d at 492–93). An officer may stop a driver if the officer has reasonable suspicion that a traffic violation was in progress or had been committed. *Id.*; *Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.).

It is a misdemeanor offense for a person to operate a motor vehicle without a tail lamp that emits a white light that illuminates the rear license plate and makes the plate clearly legible at a distance of fifty feet from the rear of the vehicle. TEX. TRANSP. CODE ANN. § 547.322(f) (West, Westlaw through Chapter 46, 2015 R.S.). Gonzalez stated in his report that the rear license plate lamps of Cardenas's car "were completely out and not working." Cardenas asserted in his petition to the trial court that the defect was a

9

"mere equipment violation" controlled by *Vicknair v. State*. 751 S.W.2d 180, 189 (Tex. Crim. App. 1986) (op. on reh'g). However, we agree with the Department that *Vicknair* is distinguishable. *Vicknair* involved a tail lamp required by a different statutory provision that a vehicle have two rear-facing tail lamps emitting red light visible from a distance of 1,000 feet from the rear of the vehicle. *Id.* The tail lamp in *Vicknair* emitted white light through a crack but still emitted red light visible at the distance required by the statute. *Id.* The Texas Court of Criminal Appeals ruled that a traffic stop of that vehicle was not justified because the vehicle still complied with the requirements of the statute. *See id.* Here, by contrast, Castellano's report reflects that the taillight was "defective" and Gonzalez's report reflects that the lamp illuminating the license plate was not functioning at all. We conclude that there is substantial evidence to support the ALJ's conclusion that reasonable suspicion existed to stop Cardenas. *See Gonzales*, 276 S.W.3d at 93.

We turn next to the question of whether there was probable cause to believe that Cardenas was operating a motor vehicle in a public place while intoxicated. Probable cause for a warrantless arrest exists if, at the moment of the arrest, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person to believe that the person arrested had committed or was committing an offense. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Probable cause requires "more than a bare suspicion" but less evidence than is required to sustain a conviction. *Id.* Both Castellano and Gonzales observed that Cardenas had bloodshot eyes, slurred speech, and was unsteady on his feet. He told both officers that he drank beers earlier that night but contradicted himself on the number that he consumed. Gonzalez's report reflected that

Cardenas exhibited six out of the six possible clues for intoxication on the horizontal gaze nystagmus test. We conclude that substantial evidence exists to support the ALJ's conclusion that probable cause existed that Cardenas was operating a motor vehicle in a public place while intoxicated. *See Chilman v. State*, 22 S.W.3d 50, 56 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (finding probable cause to arrest for driving while intoxicated when the appellant had bloodshot eyes, slurred speech, and his breath smelled of alcohol). We sustain the Department's second issue.

## IV. CONCLUSION

We reverse the trial court's order and render judgment reinstating the ALJ's order permitting the Department to suspend Cardenas's driver's license.

NORA LONGORIA,
Justice

Delivered and filed the
30th day of July, 2015.